## VAUGHAN v. BRIDGES.

WILLS—LIMITATION OF ESTATES—CODICIL.—In construing a codicil to a will, regard must be had to limitations expressed in the will and referred to, although not set out in the codicil. This will and codicil so construed gives first taker a life estate. JUDGE TOWNSEND, *acting Associate Justice, dissents.*

Before BUCHANAN, J., Lancaster, October, 1899. Affirmed.

Action for possession of land by J. Wylie Vaughan *et al.* against John J. Bridges. From verdict for plaintiffs, defendant appeals.

*Mr. Ernest Moore,* for appellant, cites: *In construing wills, words cannot be supplied to satisfy a conjectural intent:* 1 Brev., 414; 1 N. & McC., 321; 29 S. C., 466; 27 S. C., 298; 10 Wheat., 204; 19 S. C., 300; 28 S. C., 125; 30 S. C., 84. *To raise an estate by implication, it must be plain and necessary from the words of the will, and not then when the provisions of the will can be carried into effect:* 1 McC. Ch., 9, 60; 26 S. C., 450; 15 S. C., 356; 2 S. C., 306; 33 N. Y., 599; 23 Hun., 304; 3 Paige, 9; 13 Pick., 164; 18 Johns., 368; 3 Patt. & H., 389; 29 Ency., 83; 2 Rich. Eq., 400; 6 Rich. Eq., 26, 83; Bail. Eq., 298; 16 S. C., 227; 19 S. C., 345; 18 S. C., 183; 4 S. C., 83. *Policy of law is against devises by implication:* 42 N. J. Eq., 15; 123 Ill., 205; 23 N. J. L., 330; 2 Paiv. Dev., 199; 14 Johns., 1; 6 Mass., 175; 102 Ind., 488; 1 Jarm. Wills, 215. *Definition implication:* 13 Ency., 773, 422; 109 Ind., 476. *Heirs at law cannot be disinherited by implication:* 40 Me., 288; 12 Ga., 155; 7 W. & S., 284; 35 Pa. St., 393; 1 Jarm. Wills, 546; 41 S. C., 212; 1 McC., 78; Bail. Eq., 298; 22 S. C., 276.

*Mr. T. Y. Williams,* contra (Reporter received no argument).

July 13, 1901.   The opinion of the Court was delivered by

JUDGE TOWNSEND, *acting Associate Justice.*   This was an action by summons and complaint for the recovery of a tract of eighty-five acres of land in Lancaster County, the issue of title being raised by the complaint and answer.   The cause was heard at October term, 1899, before Hon. O. W. Buchanan, Circuit Judge, and a jury.   The hearing was had upon the admissions and statement of facts and the evidence hereinafter set out and upon the agreement of counsel below set forth.   "The land here in question is a part of the tract of land known as the 'Douglass tract,' which tract was owned and possessed by Milton B. Vaughan in fee simple at the time of his death.   Milton B. Vaughan died some time about the year 1885, leaving of force his last will and codicil will hereinafter set out, and leaving as his sole heirs at law his sons, William, Wylie and John H. Vaughan, the latter being called John in the will and codicil.   The wife of Milton B. Vaughan being dead, the said 'Douglass tract' of land described in the codicil will of Milton B. Vaughan was partitioned and divided in kind amongst the sons of the said Milton B. Vaughan, viz: the said William, Wylie and John H. Vaughan, and the said eighty-five acres of land being part of the said 'Douglass tract,' was set apart to John H. Vaughan.   By deed duly executed, dated January 4th, 1883, the said John H. Vaughan conveyed to John A. Bridges, his heirs and assigns, 'all my right, title and interest in and to' the said eighty-five acres of land.   This deed contains the usual habendum clause, 'unto the said John A. Bridges, his heirs and assigns,' and the warranty clause as follows : 'And I hereby bind myself and my heirs to defend the same unto the said John A. Bridges, his heirs and assigns, against any and all persons claiming or to claim the same or any part thereof.'   John A. Bridges conveyed the same land in fee simple to the defendant, John J. Bridges, by deed dated January 12th, 1887.   The defendant, John J. Bridges, ever since the date last named, has been in posses-

sion of the said tract of land, claiming the same in fee simple.    John H. Vaughan died April 1st, 1895, leaving the plaintiffs, his children, surviving him.    Thereafter, the plaintiffs, his children, demanded the possession of said lands from the defendant, claiming to be the owners thereof, and, possession being refused, brought this action.    The following is that portion of the will of Milton B. Vaughan bearing upon the question here presented: 'Second: I give, devise and bequeath to my three sons, William, Wylie and John, my whole estate of lands, consisting of the Ingram tract, the Addison land, the Thompson tract and the Caston lands, to be equally divided between them.    My will is that John is to have the Ingram lands, Wylie the Caston place, and William the Thompson place, but those tracts, with the Addison lands, are to be valued and each son made equal in value out of the whole; each son will take the settlement on the above tracts and as much land adjoining as will make each equal in value when divided; this division to await the termination of my wife's widowhood or her death.    (Here follow bequests of negroes.)    The lands and negroes which I have given or may be allotted or received by my said three sons, William, Wylie and John, I give, devise and bequeath to the said William, Wylie and John each respectively during the term of their respective natural lives, and at their respective deaths to such child or children as they may each respectively leave, living at the time of their respective deaths; and in case either of my three sons should die leaving no child or children alive at their respective deaths then their share of lands and negroes and increase under this title or any other clause of my will is to return and be equally divided between my surviving son or sons and their legal representatives.    I mean the children of a deceased son to take among them the share of a surviving son.'    The above will bears date June 29th, 1850.    The following is that portion of the codicil will of Milton B. Vaughan bearing upon the question here presented.    It is dated May 16th, 1854: 'Whereas, I, Wilton B. Vaughan, did on the 29th June, 1850,

make and execute my last will and testament, and whereas I have since purchased some other estate in lands and negroes that a change or addition becomes necessary and I desire it also in some few particulars, do hereby make the following codicil will and amendment to the said will of the 29th June, 1850: First. Since my will of the 29th June, 1850, I have purchased a tract of land called the "Douglass tract" at the commissioner in equity sale, and also two negroes, Charles and Rush: Now I give, devise and bequeath said tract of land and negroes to my three sons, William, Wylie and John, to be equally divided amongst them, share and share alike, subject to the same limitations and conditions as is expressed and declared in the second clause of my will of the 29th June, 1850, and they are to take precisely the same estate in the Douglass tract and negroes, Charles and Rush, as is given to them in the property and estate mentioned in the said second clause of my will of the 29th June, 1850.'

"It is agreed by and between the attorneys for the plaintiffs and for the defendant that the presiding Judge shall direct a verdict by the jury in this case in accordance with the construction of the will and codicil will of said Milton B. Vaughan which may be adopted by the Court. That is to say: If the Court shall adopt the construction contended for by the attorney for the plaintiffs, that under the codicil will and will of Milton B. Vaughan, the children of John H. Vaughan were to take an estate in remainder in fee simple in the 'Douglass tract' of land, after the termination of the life estate of John H. Vaughan, then the verdict shall be for the plaintiffs. If, however, the Court shall adopt the construction contended for by the attorney for the defendant, that under said codicil and will only a life estate was given to John H. Vaughan and no estate in remainder in the 'Douglass tract' was given to the children of John H. Vaughan, then the verdict shall be for the defendant.

"The presiding Judge made the following charge to the jury: 'The plaintiffs bring this action against the defendant

and claim to be the owners of the property by reason of the provisions of the will and codicil will of Milton B. Vaughan. The construction of the will is the matter here at issue. It is agreed among the counsel that whichever way the Court rules, the verdict will be directed according to the construction the Court gives of the will. The construction the Court gives this will is this: that the plaintiffs have title to this land pursuant to the provisions of clause second of the will, in which the testator says (see clause second of will). The codicil recites the purchase of a tract of land called the "Douglass tract," which it is admitted includes this tract, and the testator there says (see first clause of codicil). My idea is that he intended to incorporate the "Douglass tract," so to speak, subject to the same limitations; therefore, I direct a verdict for the plaintiffs.' The presiding Judge thereupon refused the written requests to charge which had been in due time submitted by the defendant, and which are correctly set out in grounds of appeal hereinafter stated, and directed a verdict for the plaintiffs. Under the said direction of the Court, the jury found a verdict for the plaintiffs for the land in dispute, and judgment was entered for the plaintiffs in accordance with the verdict.

"In due time, the defendant gave written notice of intention to appeal to the Supreme Court of the said State from the said charge, refusals to charge, direction of verdict, rulings and judgment, and also executed the bond required by order of the Circuit Court to stay execution pending the appeal. The defendant now appeals to the Supreme Court of the said State of South Carolina from the said charge, refusals to charge, rulings, direction of verdict and judgment; and the defendant now states the following exceptions and grounds of appeal:

"1. Because the Circuit Judge erred in directing a verdict by the jury in favor of the plaintiffs and against the defendant for the land in dispute; and because the Circuit Judge erred in failing to direct a verdict in favor of the defendant.

"2. Because the Circuit Judge erred in holding and

charging: (a) That the plaintiffs 'have title to this land pursuant to the provisions in clause second of the will.' (b) That the testator, by the codicil and will, 'intended to incorporate the "Douglass tract," so to speak, subject to the same limitations,' to the children of John H. Vaughan as were provided in the second clause of the will as to the other lands there mentioned. (c) That, under the said codicil and will, the tract of land here in question, being a part of the 'Douglass tract,' was devised in remainder after the death of John H. Vaughan to his children then surviving. (d) That, under said codicil and will, the said Douglass tract was devised to William, Wylie and John for life, with remainder to their respective children surviving at the death of each.

"3. Because the Circuit Judge erred in failing and refusing to hold and charge, as duly requested by defendant: (a) That no estate whatever in the 'Douglass tract' of land was devised to the children of the said William, Wylie and John H. Vaughan by the terms of the said codicil will. (b) That, by the terms of the said codicil and will, William, Wylie and John H. Vaughan took an estate for life in the said 'Douglass tract' of land, and that the remainder in fee simple in the said tract remained undisposed of by said will and codicil; and that such remainder in fee simple descended to the heirs at law of the said Milton B. Vaughan. (c) That, under the admitted and agreed facts in this case, William, Wylie and John H. Vaughan took a life estate in the said 'Douglass tract' of land under the will and took the fee simple in remainder as heirs at law of the said Milton B. Vaughan; and that, under the voluntary partition between the said William, Wylie and John H. Vaughan, the tract of land described in the complaint, being a part of the said 'Douglass tract,' being vested absolutely and in fee simple in the said John H. Vaughan, and passed by the subsequent conveyances to the defendant. (d) That, under the admitted and agreed facts in this case, the defendant was and is

seized of the said tract of land here in question as owner in fee simple thereof.

"4. Because, under the agreed and admitted facts in this case and under the agreement of counsel at the hearing, the Circuit Judge erred in failing to direct a verdict in favor of the defendant and against the plaintiffs for the land in dispute." All of the above has been copied from the "Case."

As will be seen, Milton B. Vaughan, by his *will,* devised to his three sons, William, Wylie and John, *and their children,* certain lands. By the *codicil* he devised the "Douglass tract" to the same three sons, William, Wylie and John, without any mention of their children. The appellant, who derives his title through John, contends that John took only a life estate in his part of the "Douglass tract" under the codicil, but that he took the fee therein *descended* to him as the *heir of his father.* The respondents contend that under the codicil John took a life estate, and that they (his children) took the fee simple interest in remainder. So that the main question here is the construction of the codicil. This can be done only by ascertaining the intention of the testator; and this must be done according to certain rules of construction. In the first place, simply the language which the testator used must be resorted to to ascertain his intention, if plain; if not plain, then it may be considered in the light of surrounding circumstances, but there must be no resort to conjecture (*Hamilton* v. *Boyles,* 1 Brevard, 414; *Floyd, ads. Howser,* 1 N. & McC., 321; *Canedy* v. *Jones,* 19 S. C., 300; *Mellichamp* v. *Mellichamp,* 28 S. C., 125; *Durant* v. *Nash,* 30 S. C., 184). The language used in the codicil clearly gives John a life estate. There is no difference between appellants and respondents on this point, but they do differ as to the disposition of the fee simple remainder. Now what became of the balance of the estate, the fee simple remainder, after John's life estate? Appellant contends that the testator did not dispose of it, and that John inherited it at testator's death. The respondents contend that the tes-

11—61

tator *did* dispose of it—that he gave to *them* (John's child-
ren), in remainder after John's life estate. They (respond-
ents) contend that the testator, by the codicil, intended to
give his three sons, William, Wylie and John, *and their
children,* the same estate in the "Douglass tract" that he gave
them (his three sons and their children) in other lands by
his *will.* No such intention appears in the language used
in the *codicil.* The language there used refers entirely and
exclusively to the respective interests which the three sons,
William, Wylie and John, were to take, and John's children
are not mentioned. In order that John's children take an
interest, there must be words added to the codicil; that is,
if John's children are to take, it must be by implication.
Such estates are sometimes created. An implication is ad-
missible when it is *plain* from the language used by the tes-
tator that it should be allowed, or when it is *necessary* to
carry out the provisions of the instrument (*Taveau* v. *Ball,*
1 McC. Ch., 7; *Shaw* v. *Erwin,* 41 S. C., 212; *Carr* v.
*Porter,* 1 McC. Ch., 60). I fail to find any words in the
codicil which can be construed so as to show the intention
on the part of testator to include John's children. There is
not the remotest allusion to them directly or indirectly. An
implication, therefore, is not admissible from testator's lan-
guage, nor do I see any foundation for an implication on the
ground of necessity; because there can be no trouble in car-
rying out the provisions of the codicil *without* such impli-
cation. At the death of testator, John took the life estate
under the codicil, and he took the fee simple remainder which
had not been disposed of (*Andrews* v. *Loeb,* 22 S. C., 274),
as heir of testator, and the two estates having merged one
into the other, gave him the fee simple title to the land. In
*Renwick* v. *Smith,* 11 S. C., 306, an attempt was made to
interpolate the words, "and his children," in a devise similar
to the one under consideration, but the Court refused it be-
cause the intention of the testator must be ascertained from
the language which he used and not from conjecture. The
case of *Andrews* v. *Loeb, supra,* furnishes an instance in

which the fee was not disposed of by the devise. Chief Justice Simpson, in delivering the opinion of this Court, says: "We adopt the reasoning of a Circuit Judge and concur in his conclusion. This conclusion might also be sustained upon another ground if necessary. At the death of Moses Andrews, inasmuch as he devised only a life estate to his widow, without disposing of the fee in terms to any one, the fee descended to his heirs. These were his widow and his two children, who inherited one-third each. That is, the fee descended to them in that proportion, awaiting a sale as directed by the will upon the termination of the life estate." So, in this case, I think that the testator did not by his codicil dispose of the fee in the "Douglass tract" of land, but that at his death it descended to John as his heir, and from him, by deed, to John A. Bridges, and from John A. Bridges, by deed, to the appellant, John J. Bridges; and that it was error in the Circuit Judge to charge the jury that plaintiffs were entitled to an interest in said land under the codicil, and that he erred in the other respects as hereinbefore set forth in the grounds of appeal, and also in refusing appellant's requests to charge.

I think, therefore, that the judgment of the Circuit Court should be reversed and the case remanded for a new trial, but as the majority of this Court think otherwise, the judgment of the Circuit Court must be affirmed.

MESSRS. JUSTICES POPE AND GARY *dissent.*

MR. CHIEF JUSTICE McIVER, *dissenting.* After a very careful examination of this case, I regret to say that I am unable to concur in the conclusion reached by his Honor, Judge Townsend, acting Associate Justice. The facts of this case are so fully, fairly and clearly set forth in the opinion of Judge Townsend as to supersede the necessity for any further statement here; and the only question is whether the testator, Milton B. Vaughan, died without making any disposition, either by his will or the codicil thereto, of the

remainder in a tract of land known as the "Douglass tract," after the termination of the life estates created therein by the codicil to his will.

In the first place, the presumption is that a person who undertakes to dispose of his property by will, intends to dispose of all of his property and the whole of his interest therein, unless there is something in the will manifesting a contrary intent.    Here there is nothing whatever in the will, or at least those portions of it which are set out in the "Case" (for there is no full copy of the will set out), which manifests any such contrary intent.    On the contrary, the recitals in the codicil plainly show that the testator did not intend to die intestate as to any portion of his property. For those recitals show that the testator had acquired other property, a part of which was real estate—the "Douglass tract"—after he had made his will, which subsequently acquired property, under the law as it then stood, would not have passed under his will and, therefore, he proceeded to execute a codicil to his will, apparently for the express purpose of disposing of such after acquired property.    This strengthens the general presumption that the testator intended to dispose of his whole estate; and while not conclusive, as the question still remains whether he has expressed such intention in such a way as will warrant the Court in carrying into effect such intention, yet it affords some aid in construing the language actually used by the testator in his will and codicil.    For, after all, the cardinal rule of construction of a will is to seek for the intention of the testator as disclosed by the language which he used.    In the first place, I would remark that it seems to me to be misleading to say that the testator by his *will* devises to his three sons, William, Wylie and John, "and their children," certain lands, whereas by the *codicil* he devises the "Douglass tract" to the same three sons, William, Wylie and John, without any mention of their children.    For in the second clause of his will the testator uses this language: "I give devise and bequeath to my three sons, William, Wylie and John (with-

out mentioning their children), my whole estate of lands (designating the several tracts), to be equally divided between them," and then proceeds to indicate what tract each son shall take, and how and when the division shall be made; and after making some bequests of negroes, then proceeds as follows: "The lands and negroes which I have given or may be allotted or received by my said three sons, William, Wylie and John, I give devise and bequeath to the said William, Wylie and John, each respectively during the term of their respective natural lives, and at their respective deaths to such child or children as they may each respectively leave living at the time of their respective deaths; and in case either of my said three sons should die leaving no child or children alive at their respective deaths, then their share of lands and negroes and increase under this title or any other clause of my will, is to return and be equally divided between my surviving son or sons and their legal representatives. I mean, the children of a deceased son to take among them the share of a surviving son." In the codicil, the testator, after reciting the fact that, since the making of his will, he had acquired other property, to wit: the "Douglass tract" of land and two negroes, Charles and Rush, proceeds in the following language: "Now I give devise and bequeath said tract of land and negroes to my three sons, William, Wylie and John, to be equally divided amongst them, share and share alike, subject to the same limitations and conditions as is expressed and declared in the second clause of my will of the 29th June, 1850; and they are to take precisely the same estate in the Douglass land and negroes, Charles and Rush, as is given to them in the property and estate mentioned in the said second clause of my will of the 29th June, 1850." It seems to me that the language used in the codicil necessarily implies an intention upon the part of the testator that the "Douglass tract" should, like the other lands mentioned in the second clause of the will, above copied, go to the three sons for life, with remainder in fee to their surviving children. What other possible meaning were the words, "subject

to the same limitations," intended to express? If the testator, in the codicil, instead of using the words, "subject to the same limitations," expressed in the second clause of the will, had repeated the words used in the second clause of the will, by which the estate of the sons was declared to be for life only, I suppose it could not be doubted that the effect would be to give the sons an estate for life, with remainder in fee to their surviving children; and it seems to me that the words actually used in the codicil amounted, practically, to a repetition of the language used in the second clause of the will. I have examined the cases cited to sustain a contrary view, and do not think that they are sufficient for the purpose.

In my opinion, therefore, the judgment of the Circuit Court should be affirmed; and as the majority of the Court concurs in this conclusion, the judgment of the Circuit Court is affirmed.